JOSEPH P. FREEMAN, Appellant, v. JOHN HERWIG, Appellee.

1. **Boundaries:** SURVEYS: VARIANCE: VERDICT. In an action where the actual location of a lot line is in dispute, and there is a variance between several surveys made to determine the same because of differences in the several points of commencement, no point being established and recognized generally as correct, and the evidence as to said line is otherwise conflicting, a special finding of the jury locating said line will not be disturbed upon appeal.

2. **Party Walls:** AGREEMENT FOR USE OF: APPLICATION OF STATUTE. An agreement in settlement for the use of a party wall will not preclude one from using other portions of such wall in accordance with the terms of the statute relating to the use of walls in common.

3. ———: CHANGES AFFECTING FRONT OF ADJOINING BUILDING. Upon complying with the provisions of the statute authorizing one to use a party wall, he is entitled to change the front of the adjoining building to the line of division, and the adjoining owner cannot complain that the front of his building is thereby marred.

*Appeal from Muscatine District Court.*—HON. A. HOWAT, Judge.

SATURDAY, JANUARY 30, 1892.

ACTION at law to recover damages for alleged trespass upon real estate. There was a trial by jury, and a verdict and judgment in favor of the defendant. The plaintiff appeals.—*Affirmed.*

*Richman & Burke* and *E. F. Richman*, for appellant.

*J. Carskaddan* and *C. F. Garlock*, for appellee.

ROBINSON, C. J.—Lot number 10 of block number 13 in the city of Muscatine is bounded on the north by Second street, and on the west by Sycamore street. It has a front on Second street of sixty feet, a length of one hundred forty feet, and is of uniform width. Sycamore street, and other streets parallel with it, commence at the Mississippi river, extend thence in a direction west of north, and are crossed at right angles by Second street and other streets, with which it is parallel. For convenience of description, however, Second street may be said to extend from east to west, and the lot described from north to south. The plaintiff owns the west half of the east half and the defendant the east half of the east half of the lot. In the year 1883 the plaintiff erected upon his part a brick building, three stories in height, and forty-nine feet in length; and the controlling questions in this case grow out of the location of the east wall of that building. It is contended by the plaintiff that the wall is located wholly upon his own ground, and that the defendant wrongfully treated it as a wall in common, inserting joists in it, closing certain windows, adding to its height, building chimneys into and upon it, and cutting the cornice and other ornamental work on the front end. Complaint is also made of the action of the defendant in extending the wall towards the rear end of the lot, a distance of about thirty feet, and in placing material for use in the construction of his building on the premises of the plaintiff. The defendant contends that the wall in question is a wall in common, and that what he has done was authorized by the law. The jury found specially that the true boundary line between the land of the

plaintiff and that of the defendant was beneath the center of the wall, and returned a general verdict in favor of the defendant.

I. The evidence in regard to the true location of the boundary line in question is conflicting. In the year 1876 the defendant purchased that part of the lot which he now owns, and one Schæffer became the owner of that part now owned by the plaintiff. The north end of the lot included in the two parts thus owned was occupied by one-story frame buildings, which were divided into three rooms, each of which was about ten feet in width. The lot was below the grade of Second street, and, in order to raise the buildings to the proper level, they were placed upon posts ten or twelve feet in height. For the purpose of locating the western boundary line of his part of the lot, the defendant employed a surveyor named Kennedy, who made some measurements, and located the eastern boundary line of the defendant's part of the lot. That was found to be under a building which stood on ground owned by a person named Stone. When that fact was ascertained the defendant informed Stone of it, but he declined to accept the result of Kennedy's work, and suggested that a surveyor named Matthewson be secured to do the work. Matthewson was employed, and located the west boundary line of the defendant's part of the lot substantially as it is now claimed to be by the defendant, —that is, where the center line of the wall in controversy is now located,—and fixed the line so located by driving a spike in the sidewalk in front of the middle building, and by driving another in the rear end of the building. Stone and Schæffer were present, and made no objection to the line as established. A partition was constructed on the line in the building, and the defendant occupied his part of the lot to the partition thus made until the wall was built. In the year 1882 a controversy arose between the defendant and persons

1. BOUNDARIES: surveys: variance: verdict.

who owned a portion of the lot adjoining his premises on the east as to their common boundary line, and Matthewson was again employed to locate the line. He commenced his survey at a point different from that he had used in 1876, and located the line in dispute several inches further east than it was fixed by his survey of 1876. The last survey was not satisfactory, and a surveyor named Bailey was employed, whose measurements located the line in dispute in this case substantially where Matthewson located it in 1876. In the year 1883 the plaintiff constructed the wall in question, placing its center opposite the spike in the sidewalk. He cut the wooden building through at the partition and left the joists of proper length to insert in the wall, and they were so inserted when the wall was built. At about the time the wall was built the plaintiff and the defendant entered into an agreement in writing of which the following is a copy:

"Know all men by these presents, that J. P. Freeman has sold to J. H. Herwig the following portions of the easterly half of the wall on lot ten (10), in block thirteen (13); in the city and county of Muscatine, and in the state of Iowa; the portion of the wall so sold being, length so sold forty-nine feet, and the brick portion of it being twenty-two feet and four inches high, reaching to the top of the first story of the dwelling and including the stone foundation. In consideration whereof the said Herwig has paid the said Freeman the sum of one hundred thirty dollars ($130) in full satisfaction of the portion of the wall so sold. In witness whereof the said Freeman and the said J. H. Herwig have set their hands, this, the first day of October, 1883.                J. P. FREEMAN.
                                          "J. H. HERWIG.

"Duly acknowledged."

In the year 1888 the defendant removed his frame buildings, and commenced to replace them with a three-story brick structure. In doing so he made the

change in and addition to the wall and its front, of which plaintiff complains. After the work had been commenced, the plaintiff sought to have the defendant restrained from carrying out his plans; but the defendant filed an indemnifying bond, and the injunction was refused. This action was then commenced. While it was pending one McCampbell made a survey which tended to show that the line in dispute was fourteen inches east of the center line of the wall. It will be of no advantage to anyone to describe minutely the different surveys. It is sufficient to say that there was no point established and recognized generally to be correct from which the different surveys were made, and the variance in results must be attributed to differences in the several points of commencement. Some of them were near block 13 and others were several blocks distant. The jury were authorized to determine from the evidence which survey was the most accurate and satisfactory, and the actual location of the line in dispute, and we are of the opinion that the verdict is fully sustained by the evidence. The special findings of the jury determine that the wall in question was properly located for use as a wall in common, and the evidence authorized the jury to find that the defendant had made only a proper use of it.

II. It is said that, if the wall might at any time have been considered as a wall in common, the agreement by which the plaintiff sold to the defendant a portion of it took the wall out of the operation of the statute. The agreement was not designed as a substitute for the statute, but was in harmony with it. At the time it was entered into, the buildings on the defendant's part of the lot were but one story in height, and the agreement was, in effect, a settlement between the parties for that portion of the wall which the defendant was then using. It was not intended to operate as a relinquishment by the defendant of his right to use

2. PARTY walls: agreement for use of: application of statute.

other portions of the wall thereafter, and should not be given that effect.

III. The appellant complains of the acts of the defendant in cutting the cornice and in otherwise inter-

8. ——: changes affecting front of adjoining building.

fering with the front end of the wall, thereby marring the appearance of the building of the plaintiff. The defendant cut the cornice at the middle of the front end of the wall, and placed a pilaster, made of brick and iron, in such a manner as to cover the east half of that end. When the defendant complied with those provisions of the statute which authorized him to proceed with his work, he was entitled to treat the easterly half of the wall which the plaintiff had erected in the same manner that the plaintiff could have treated the remainder. The fact that the latter constructed the wall and extended his cornice entirely across its front end gave him no right to maintain it there after the defendant had taken the steps which gave him a right to use the wall. After that time the right of each party to use the wall the plaintiff had built was equal to that of the other. When the plaintiff built the wall he was charged with knowledge of the fact that the defendant might elect to treat it as a wall in common, and should have planned his building accordingly. He cannot now complain that the appearance of his building is somewhat marred by the changes the defendant has made. They appear to have been effected in a proper manner, without the doing of any unnecessary injury to the plaintiff.'

IV. The appellant discusses at some length the pleadings, evidence and instruction as applied to the acquiring of title by adverse possessions and by acquiescence. The finding of the jury that "the true line is beneath the center of the wall now between the plaintiff and the defendant" makes the matters thus discussed of no importance in the case, and they need not be further considered. Rulings of the court in regard to the admission of evidence are criticised.

We have examined carefully the various questions argued by counsel, but find no ground for disturbing the judgment of the district court. It is therefore AFFIRMED.